WALNUT RIDGE MERCANTILE COMPANY *v.* COHN.

Opinion delivered June 11, 1906.

1. INSTRUCTIONS—EXCEPTION IN GROSS.—An exception in gross to several instructions given by the court is not available on appeal unless the charge is erroneous in its whole scope and meaning, or unless none of the instructions given by the court is correct. (Page 341.)

2. EVIDENCE—LETTER AS PART OF RES GESTAE.—A letter containing an offer to sell goods, dictated by the general manager of two corporations and signed by one of the corporations, is admissible against the other as part of the *res gestae* where it led up to a sale afterwards made by the latter. (Page 341.)

3. STATUTES OF FRAUDS—PART PERFORMANCE.—Delivery and acceptance of part of chattels sold and payment therefor done in pursuance of the contract take the sale out of the statute of frauds, though at the time of such part performance there was no express reference made to the contract; it being sufficient if the circumstances surrounding the contract and purchase and the subsequent delivery of the

goods show that they were delivered in part performance of the contract.    (Page 343.)

4. DAMAGES—BREACH OF CONTRACT OF SALE.—For breach of a contract to sell and deliver goods, the vendee is entitled to recover the difference between the contract and the market price of the goods, (Page 344.)

5. EVIDENCE—VALUE—SUFFICIENCY.—Where plaintiff alleged that defendant undertook to sell so many bales of middling cotton at 9½ cents per pound to plaintiff, and that, on defendant's failure to perform the contract, he bought enough bales of middling cotton to make the required number, and testified that the cotton so purchased cost 11½ cents per pound, and there was no issue raised by the pleadings as to the grade of cotton purchased by plaintiff after defendant's default, and no questions were asked of plaintiff as to the grade of cotton purchased by him, a finding that middling cotton was worth 11½ cents per pound on the day plaintiff purchased will not be set aside.    (Page 344.)

6. SAME—RECEIPT OF STRANGER.—The written receipt of a third person acknowledging the payment of money, while a statement against the receiptor's interest, is not admissible unless the receiptor is dead or otherwise unavailable.    (Page 345.)

7. APPEAL—HARMLESS ERROR.—Error in the admission of evidence is not prejudicial where the fact which it tends to prove is otherwise established by competent and undisputed evidence.    (Page 346.)

Appeal from Lawrence Circuit Court; *Frederick D. Fulkerson,* Judge; affirmed.

### STATEMENT BY THE COURT.

I. Less was the vice-president and general manager of the Walnut Ridge Mercantile Company, a corporation doing business in Walnut Ridge, Arkansas. In 1903, acting for the Mercantile Company, he made a contract for the sale of a certain quantity of middling cotton to R. Cohn, of Memphis, Tenn., at 9½ cents per pound. The Mercantile Company afterwards delivered to Cohn 34 bales of cotton, but refused to deliver more. Cohn brought this action against the Mercantile Company to recover damages for breach of contract. He alleged that his contract with the defendant company was for 100 bales of cotton of the grade middling at price of 9½ cents per pound; that the defendant delivered on the contract 34 bales of cotton, and refused to deliver more; that plaintiff thereupon purchased 66 bales of middling cotton for the account of defendant at 11½ cents per pound;

that plaintiff, by reason of the failure of defendant to deliver the cotton, was damaged in the sum of $3,917.13, for which he asked judgment. The defendant filed an answer, denying most of the allegations of the complaint. On the trial the court gave certain instructions, and refused other instructions asked by defendant. The language of the bill of exceptions, noting exceptions of defendant to these instructions, is as follows:

"The following, given upon behalf of the plaintiff, numbered 1, 2, 3 and 4, which were excepted to by defendant. The court, upon its own motion, gave instructions 5, 6, 7 and 8, which were excepted to by defendant. The defendant asked instructions numbered 1, 2, 3 and 4, which were refused by the court, and the refusal to give same was excepted to by the defendant."

. After this statement in the bill of exceptions the instructions are copied in full without any further reference to exceptions.

There was a verdict in favor of plaintiff for the amount of his claim, and defendant appealed.

*W. E. Beloate,* for appellant.

1. From the evidence it is clear that there was no such meeting of minds as would constitute a contract for the sale of 100 bales.

2. There was no evidence showing that Less as manager of appellant had authority to sell cotton for future delivery. 78 S. W. 49. The burden is on appellee to show that appellant was engaged in the business of selling cotton for future purchase and delivery, and that Less had authority to transact such business. 29 Am. Dec. 543. The appointment of a general agent to do and transact all matters of business does not necessarily authorize the agent to sell stock or other property of the principal. 1 Black (U. S.), 192. Acts must be shown to be within the apparent scope of authority. 14 S. W. 1071. See also 1 Am. & Eng. Enc. Law (2 Ed.), 998, note; *Ib.* 1022, note.

3. At the time of making the contract something must be delivered and accepted as a part of the whole lot sold, or afterwards some part of the property must be delivered and accepted by the buyer as a part of the whole, and such delivery and acceptance must be made under the former oral contract, with some reference made thereto at the time of delivery and acceptance;

otherwise the statute of frauds is not satisfied. Benjamin, Sales, 1888 Ed., 154; *Ib.* 188, note; 19 Ark. 473; 2 Sandf. 157; Tiedeman, Sales, 154; *Ib.* 155. Prior to right of recovery appellee should have tendered payment. Tiedeman, Sales, 1891 Ed., § 207; 69 Mich. 215; 35 Ohio St. 104; 11 N. Y. Supp. 597; 39 Ga. 597; 43 Wis. 227; 55 L. R. A. 301. Acceptance must be voluntary and unconditional. Receipt of part of the goods without acceptance is not sufficient, such acceptance must be as part performance. 47 N. Y. 450; 65 N. Y. 368; 51 N. Y. 211; 63 N. Y. 587.

4. The court erred in giving instructions 1, 2, 4, 5 and 8. 25 Am. & Eng. Enc. Law (2 Ed.), 1151; 24 *Ib.* 1152; 2 Ark. 396; 57 Ark. 257; 159 N. Y. 371; 2 Sedgwick on Dam. (8 Ed.), 734; 105 U. S. 709; 20 Hun, 416; Kirby's Digest, § 3656.

*H. L. Ponder* and *Jno. W. & Jos. M. Stayton,* for appellee.

1. If there was error in the instructions, it was waived. Objections to instructions in gross will not be considered. 2 Ark. Law Rep. 678; 3 *Ib.* 333; *Ib.* 570.

2. The controversy is settled by the verdict.

RIDDICK, J., (after stating the facts.) This is an appeal by the Walnut Ridge Mercantile Company from a judgment rendered against it for the sum of $631.62 in favor of R. Cohn for failure to carry out a contract for the sale of 100 bales of cotton.

The defendant reserved exceptions to a number of instructions given by the presiding judge to the jury on the trial, but these exceptions were in gross, and not to any specific instruction, as will be seen by reference to the statement of facts, where the exceptions are copied. Such a general exception is only available where the charge is erroneous in its whole scope and meaning, or where none of the instructions given by the court are correct. We do not find that the charge of the court is in this case so radically wrong, and, therefore, if there be any special defect, it is not presented by the general exceptions made. *Quertermous* v. *Hatfield,* 54 Ark. 16; *Dunnington* v. *Frick Company,* 60 *Ib.* 250; *Young* v. *Stevenson,* 75 Ark. 181; *Dowell* v. *Schisler,* 76 Ark. 482; 8 Enc. Plead. & Prac. 258, 259.

The next question relates to the admission of evidence on the part of plaintiff. It seems that the negotiations between

the company and the plaintiff, which resulted in this contract for the sale of the cotton, were carried on by the defendant through Mr. Less, the vice-president and general manager of the company. The plaintiff testified that he first wrote Mr. Less in reference to the purchase of cotton, and received a reply from him, saying: "We turn out 30 to 40 bales per day," and asking plaintiff to make "an offer on 50 to 100 bales f. o. b. Walnut Ridge." This letter was signed "Walnut Ridge Gin Co., per R." Defendant contends that, as this letter was from the Walnut Ridge Gin Company, it was not competent evidence against the Walnut Ridge Mercantile Company. But the testimony of Less, the general manager and vice-president of the Mercantile Company, shows that this letter from the gin company was dictated by him, and written by Redwine, the bookkeeper of the Mercantile Company. It was a part of the negotiations between plaintiff and Less, the general manager of the defendant, which led up to the sale of the cotton, and was, we think, competent, as a part of the *res gestae* of the transaction, showing how the negotiations for the sale of the cotton commenced.

Again, counsel contend that the court erred in permitting the plaintiff to read to the jury the receipted bill of the cotton factors from whom the plaintiff purchased the 66 bales of cotton after defendant had refused to deliver the remaining 66 bales due on its contract. The plaintiff testified that he went into the open market, and purchased this cotton from these factors at 11½ cents a pound, and read their receipted bill for the same in connection with his evidence. Now, it is customary for cotton factors to give such bills to purchasers of cotton, and this receipt was a part of the *res gestae* of the sale. Being an admission against the interest of the factor making it and made in the ordinary course of his business, it was, we think, competent evidence of the fact of the sale and price that was paid, even in an action between third parties. *Sherman* v. *Crosby*, 11 Johns. 70; *Reed* v. *Rice*, 25 Vt. 171; 1 Greenleaf on Ev. (12 Ed.), § 120, and note to § 147. See *Cutbush* v. *Gilbert*, 4 S. & R. 555. It may not have been competent evidence of the market value of cotton, but only evidence that plaintiff had paid the cotton factor 11½ cents for cotton on that day. But where evidence is admissible for any purpose, an exception to the admission of the evidence

can not be sustained. The court should have been asked to tell the jury that they could not consider such evidence in deciding the question of the market value of the cotton.

The other questions relate to the sufficiency of the evidence. But, without going into a discussion of it, we will say that we think the evidence sufficient to support the finding of the jury that there was a contract for one hundred bales of cotton. Mr. Less, the general manager of defendant, was positive that he only agreed to sell 50 bales, but the finding of the jury, where the evidence is conflicting, settles the question, so far as this court is concerned.

The delivery and acceptance of part of the cotton on the contract and payment therefor takes the case out of the statute of frauds. The evidence makes it clear to us that the 34 bales of cotton delivered by the defendant to the plaintiff and paid for by him were delivered on this contract. According to the testimony of Less, the manager of the defendant, these were delivered on a contract to sell 50 bales. It is conceded that there was only one contract, though whether it was a contract for the purchase of 50 or 100 bales was a disputed question. But, a part of the cotton bought having been delivered and accepted on the contract and paid for, the whole contract was taken out of the statute, without regard to whether it was a contract for 50 or 100 bales. *Swigart* v. *McGee,* 19 Ark. 473.

The contention that there must have been some reference to the contract at the time the 34 bales of cotton were delivered and accepted on the contract is not sound argument under our statute. It is sufficient, under our statute, if "the purchaser shall accept a part of the goods so sold and actually receive the same; or, third, shall give something in earnest to bind the bargain or in part payment thereof." Kirby's Digest, § 3656. The delivery and acceptance of part of the goods must, of course, be done in pursuance of the contract. A delivery and acceptance of cotton on another contract would not be sufficient to take this contract out of the statute; but, if the 34 bales of cotton were in fact delivered on this contract, it is immaterial that no express reference was made to the contract at the time. That is required under the statute of New York and perhaps other States, but not where the language of the statute is the same as our statute. Under our

statute and statutes similar thereto, it .is sufficient if the circumstances surrounding the contract of purchase and the subsequent delivery of the goods show that they were delivered in part performance of the contract. 29 Am. & Eng. Enc. Law, 969.

The evidence shows that the plaintiff purchased the cotton in the market as soon as he ascertained definitely that the defendant did not intend to perform his contract. He was therefore entitled to recover the difference between the contract price and the market price of cotton of same grade called for in the contract on the day he ascertained that defendant would not perform its contract.

The evidence tending to show the market value of the cotton at that time is not very satisfactory. Plaintiff testifies that the cotton he bought from the factors was worth $11\frac{1}{2}$ cents per pound. The evidence does not show what the grade of that cotton was. But plaintiff alleges in his complaint "that on November 9, 1903, in order to protect himself in the purchase made from defendants, he bought in for the account of the defendants 66 bales of middling cotton at and for the price of $11\frac{1}{2}$ cents per pound, amounting to the sum of $3,917.13." The answer of the defendant to this allegation of the complaint is as follows: "Defendant further denies that "plaintiff bought for the account of defendant 66 bales of cotton at any price whatever." It will be noticed that this is not a denial that the defendant bought 66 bales of middling cotton on the day and at the price alleged in the complaint, but is only a denial that the cotton was bought for the account of defendant. As there was no question raised by the pleadings as to the grade of this cotton which plaintiff alleged that he purchased after default of defendant, so neither party asked the plaintiff, while he was on the witness stand, any question in reference to the grade of this cotton. It seems to have been assumed by both parties, as they had the right to do under the pleadings, that the cotton purchased by plaintiff was middling cotton. As he alleged in his pleadings that he bought middling cotton, and testified on the stand that this cotton was worth on the market on that day $11\frac{1}{2}$ cents per pound, we must take it that he meant to say that middling cotton was worth on that day $11\frac{1}{2}$ cents per pound, and

that the parties so understood. While, as before stated, the evidence on that point is not quite satisfactory, it is sufficient to sustain the verdict of the jury.

The contention that the charter of the defendant does not permit it to sell cotton for future delivery is not sustained by the proof. That was a matter peculiarly within the knowledge of the defendant, but it introduced no evidence to sustain this allegation in its answer. In the absence of any evidence, it will not be presumed that the general manager of the defendant made this contract without authority.

Judgment affirmed.

ON REHEARING.

Opinion filed July 23, 1906.

RIDDICK, J. There is only one point on which we feel doubtful as to the correctness of our former decision in this case, and that is whether it was competent for the plaintiff to introduce the receipted bill of Stuart, Gwynne & Company as evidence of the fact that plaintiff had paid 11½ cents per pound for the 66 bales of cotton purchased by him from that firm. In holding, as we did in the former opinion, that this receipted bill was competent evidence of the fact of payment, we followed the law as stated in Greenleaf on Evidence, and as decided in the following cases referred to in the opinion. *Sherman* v. *Crosby*, 11 Johns. 70; *Reed* v. *Rice*, 25 Vt. 171; Greenleaf on Evidence (12 Redfield's Ed.), § 120, and note to section 147.*

These authorities seem to uphold the admission of such evidence as a part of the *res gestae* of the payment. But on further consideration of the question we are of the opinion that the weight of authority, as well as reason, is against the admission of receipts executed by persons not parties to the action unless it be shown that the person executing the receipt is dead or beyond the jurisdiction of the court, and this was not shown on the trial of this case. The law on this point is thus stated in a late work on evidence. "The written receipt of a third person acknowledging the payment of money is undoubtedly a statement of a fact

---

*These sections have been omitted from text of 16th edition of Greenleaf on Evidence, and transferred to the appendix and to notes.

against interest, but it can not be received  *  *  *  unless the receiptor is deceased or otherwise unavailable." 2 Wigmore on Evidence, § 1456; *Silverstein* v. *O'Brien,* 165 Mass. 512; *Ferris* v. *Boxell,* 34 Minn. 262; *Cutbush* v. *Gilbert,* 4 S. & R. 551. But, although we have concluded that the admission of the receipt executed by a person not a party to the action was improper, a majority of the court are of the opinion that no prejudice resulted, for the reason that in their opinion its only effect was to show the price paid by the plaintiff for the cotton in Memphis, which fact, as they think, was shown by the undisputed testimony of the plaintiff himself. As other undisputed evidence shows the same facts shown by the receipt, a majority of the court are of the opinion that the admission of the receipt was harmless error.

But Judge WOOD and myself are not able to concur in this ruling, for in our opinion there is nothing to show that the market price for middling cotton on the day Cohn purchased the 66 bales was as high as 11½ cents per pound except the testimony of Cohn and this receipt. There is other evidence that tends to show that the price of middling cotton about that time was less than the price named. Under such circumstances we are not able to say that the introduction of this receipt was harmless error. It was read to the jury as evidence of the facts stated therein, and it seems to us that the natural inference is that it had some weight with the jury in deciding the question as to what the market value of the cotton was at that time. *Silverstein* v. *O'Brien,* 165 Mass. 512. For these reasons we think that the judgment should be reversed, and a new trial ordered, unless a remittitur be entered.

But, as before stated, the majority of the court think otherwise; and on the whole case they are of the opinion that the motion should be overruled. It is so ordered.